**Joshua Denbeaux (JD-7849)**
**Denbeaux & Denbeaux**
**366 Kinderkamack Road**
**Westwood, NJ 07675**
**(201) 664-8855**

*Attorney for Plaintiff Martin Trepel*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                            )
                                            )
**MARTIN TREPEL,**                          )
                                            )
              **Plaintiff**                 )
--v—                                        )
                                            )
                                            )             **COMPLAINT AND**
**AIDAN MCCORMACK,**                        )             **JURY DEMAND**
                                            )
              **Defendant.**                )
_____)

Dr. Martin Trepel, for his Complaint, says:

### Jurisdiction and Venue

1. Plaintiff Martin Trepel is a resident and citizen of the State of Florida.

2. Defendant Aidan McCormack, on information and belief, is and was at all material times a resident and citizen of the State of New York, and an attorney licensed to practice law in the State of New York and conducting the practice of law in person in this District.

3. There is complete diversity of citizenship between plaintiff and defendant within the meaning of 28 USC § 1332(a), and the amount in controversy exceeds the sum of $75,000 exclusive of interest, costs, attorney fees.

4. The causes of action alleged herein arose in the Southern District of the State of New York.

## General Factual Allegations

5. In 2002, Plaintiff filed suit (the "federal court suit") in the federal court for the Southern District of New York against one Mourtala Diop ("Diop"), a citizen of Senegal, in a complaint alleging that Diop had, by misrepresentations and fraud, palmed off on plaintiff certain inauthentic terra cotta statuary having small value, which Diop misrepresented as genuine antique African tribal artworks having great value.

6. Plaintiff's complaints to the police concerning the same actions of Diop eventually resulted in the filing of criminal felony charges against Diop in the state court of New York State.

7. Attorney Karen Dippold and her law firm entered appearances and acted as counsel for Diop in both the federal court civil proceedings and the state court criminal proceedings set forth above, and plaintiff was represented in the federal court action by Defendant Aidan McCormack, and by Attorney P. David Palmiere acting *pro hac vice*.

8. In October, 2002, justly apprehensive that Diop would sequester his assets and flee the jurisdiction, Defendant McCormack moved on plaintiff's behalf in the federal court suit for the attachment of Diop's assets and for a restraining order to prohibit such sequestration.

9. At that time, plaintiff had informed himself and was aware, and had informed defendant, who was also aware, that:

a. Diop's possessions were principally stored in an apartment Diop

maintained at the Connaught Tower cooperative in Manhattan, operated by the Connaught Tower Corporation ("CTC");

b. Diop could not remove his possessions from the CTC apartment without the permission of an authorized agent of CTC; and

c. CTC would not approve any removal of goods from Diop's apartment without legal assurance that there was no legal impediment to such a move.

10. On October 28, 2002, at a federal court hearing on plaintiff's motion for an order attaching assets and restraining Diop from disposing of or sequestering assets, Attorney Dippold stated in open court, in an attempt to persuade those present that no restraining order was needed, that Diop had been strictly instructed that he was to remove nothing from his CTC apartment.

11. On October 28, 2002, United States District Judge Gerald Lynch stated in open court that he was granting Dr. Trepel's motion for a restraining order and order of attachment of Diop's assets, including an order restraining Diop from sequestering his assets, and Judge Lynch instructed Attorneys Dippold and McCormack to (a) work out language to be included in a proposed written order, (b) submit the proposed written order to the Court for signature, and (c) submit disputes concerning the written order to the Court for resolution.

12. At the conclusion of the hearing on October 28, 2002, Plaintiff instructed Defendant McCormack to send a letter to CTC to inform CTC that the federal court had granted a restraining order that ordered Diop not to sequester his assets.

13. Defendant did not send that letter, or any notice in any form, to CTC to

advise CTC of the Judge's ruling in the federal court suit.

14. During the time period of approximately two weeks when Dippold and McCormack were negotiating the language of the written restraining order, Dippold secretly wrote a letter to CTC's resident manager, dated November 1, 2002, advising the resident manager that there was no police "hold" on Diop's belongings in the apartment.

15. The Dippold letter dated November 1, 2002 was written and sent for the express purpose of causing CTC's resident manager to allow Diop to remove his belongings from the CTC apartment and move them to a place known only to him, contrary to the bench order of the United States District Court restraining Diop from sequestering assets, and contrary to Dippold's statement to the federal court and parties just a few days earlier that no external restraint was necessary because Diop was under instructions to remove nothing from the apartment.

16. Dippold's November 1, 2002 letter to CTC's resident manager failed to make any mention whatsoever of the federal court proceedings, or the federal judge's bench order in open court restraining Diop from disposing of or sequestering any property; and although a copy of the letter was sent to Diop himself, no copy of the letter, or any other notice of the intended removal of the property, was given to any court, to plaintiff, or to McCormack, all of whom remained without any knowledge that Dippold was aiding Diop in removing all of his property from the CTC apartment and sequestering it.

17. Upon receipt of November 1, 2002 Dippold letter, and having no other or further information about the matter, CTC's resident manager allowed Diop to remove

all of Diop's property from the apartment, and over the next several weeks, Diop did in fact remove all of his valuable possessions from the apartment and sequester them in violation of the federal judge's ruling and order.

18. Diop then shipped certain assets out of the Southern District, in further violation of Judge Lynch's order, including on information and belief the assets that had been removed from the CTC apartment, and although Attorney Dippold was aware that her client was engaged in this action, she failed to take any steps to prevent it or to report it to anyone in time to prevent the shipments from leaving the United States.

19. After removing and sequestering his property, Diop jumped bail in the state court criminal case, violated various additional court orders in the federal civil case, and fled the jurisdiction, and despite the issuance of state and federal bench warrants for his arrest, Diop has not been re-apprehended nor has any part of the sequestered property been located or recovered.

20. The federal court eventually granted a default judgment against Diop in favor of plaintiff, in the amount of $940,694.53, plus interest until paid.

21. The CTC apartment, which the federal court had attached and which by its nature could not be removed from the jurisdiction or sequestered by Diop, was subsequently sold at Sheriff's sale for $150,000, leaving a deficiency in the federal judgment against Diop and in favor of plaintiff of $790,694.53, plus accrued interest.

22. Plaintiff's ability to collect the remainder of his judgment was substantially impaired or lost when Diop, with the assistance of Dippold, successfully sequestered and hid the property he removed from the CTC apartment.

23. At the time it was sequestered by Diop, the property in Diop's CTC

apartment included many valuable works of African art and had sufficient value to satisfy plaintiff's federal court judgment against Diop.

24.     Plaintiff has previously commenced an action in against Attorney Dippold and her law firm for the wrongful conduct committed in the matter, which action bears case number 04 Civ. 8310 (DLC), assigned to the United States District Judge Denise L. Cotes, and is still pending, and Defendant McCormack, his former law firm Hodgson Russ, and Attorney Palmiere have been named by Attorney Dippold and her firm as third party defendants in that action.

### Count I.     Professional Negligence

25.     Plaintiff incorporates the allegations of the preceding paragraphs 1-24 as though set forth in full in this count.

26.     At all material times, defendant McCormack was an attorney engaged in the practice of law within this jurisdiction, and had an attorney-client relationship with plaintiff, and accordingly owed plaintiff a duty to comport himself according to the standard of care applicable to attorneys within this jurisdiction.

27.     Defendant breached his duties, and was professionally negligent, in that he:

    a.     Failed to follow the lawful directive of his client to provide prompt notice of federal court's ruling to CTC.

    b.     Failed to inform the client that he had not complied with that directive, so that the client could take other appropriate measures.

    c.     Failed to independently determine that notice to CTC would be in the best interests of the client, failed to suggest that course of action to the client,

and failed to follow through by giving such notice for the protection of the client.

28. While the conduct of Attorney Dippold was a proximate consequence of the damage sustained by plaintiff, the failure of Defendant McCormack to notify CTC of the federal court's ruling and of the subsequent issuance of a restraining order was also a proximate cause of that harm, as CTC's resident manager permitted Diop to remove and sequester his property because he had no notice of the federal court proceedings.

29. As a proximate consequence of the removal and sequestration of property by Diop, plaintiff sustained the damages set forth above.

**WHEREFORE**, PLAINTIFF RESPECTFULLY PRAYS that this Honorable Court shall enter judgment in favor of plaintiff and against defendant in an amount exceeding $790,694.53, adjusted if appropriate for comparative fault as determined between Dippold and McCormack, together with costs, interest and attorney fees, and that the Court shall grant such other and further relief as the Court shall find consistent with equity and good conscience.

DENBEAUX & DENBEAUX

_____
Joshua Denbeaux (JD-7849)
Denbeaux & Denbeaux
366 Kinderkamack Road
Westwood, NJ 07675
(201) 664-8855

Dated: October 25, 2005

## DEMAND FOR TRIAL BY JURY

NOW COMES PLAINTIFF Martin Trepel, and demands a trial by jury of all issues in this cause so triable, of right or upon demand therefore.

DENBEAUX & DENBEAUX

_____
Joshua Denbeaux (JD-7849)
Denbeaux & Denbeaux
Attorney for Plaintiff
366 Kinderkamack Road
Westwood, NJ 07675
(201) 664-8855

Dated: October 25, 2005